IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES OWENS, #K-83253 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-1169-MJR-SCW |
| | ) |
| STEPHEN DUNCAN, | ) |
| JOHN COE, | ) |
| CLAUDIA DOWTY, | ) |
| MIKE HIGGINS, | ) |
| LYNN C. PHILLIPPE, | ) |
| UNKNOWN PARTY, | ) |
| and TAMMY KIMMEL, | ) |
| | ) |
| Defendants. | ) |

<u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief Judge:**

**I.     INTRODUCTION**

In October 2015, while incarcerated at Lawrence Correctional Center, James Owens (Plaintiff) filed a pro se complaint in this Court under 42 U.S.C. 1983, alleging violations of his federally-secured constitutional rights. Specifically, Plaintiff alleged that various officials at Lawrence denied him adequate medical care and retaliated against him by refusing to refill two medications (Chlorphenamine and Naproxen, which he used to treat sinus pressure and arthritic pain, respectively), and that these actions/inactions were based on Plaintiff's filing of a prior lawsuit in this Court (Case No. 14-cv-0510, "the 2014 case").

On threshold review of the complaint under 28 U.S.C. 1915A, the undersigned

organized the allegations as a claim of retaliation in violation of the First Amendment (Count 1) and a claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment (Count 2). The Court ordered both counts to proceed against defendants Stephen Duncan, John Coe, Phillipe[1], and Unknown Party (identified as "medical staff who canceled Plaintiff's sick call passes after April 30, 2014"), and allowed Duncan (the Warden) to remain in the suit for purposes of requested injunctive relief. Five other defendants were dismissed without prejudice, because the complaint stated no cause of action against them. (Doc. 6, pp. 4-6).

In November 2015, the Court granted a motion to consolidate this case with the 2014 case, directed Plaintiff to file an amended complaint in the combined action, and (after reviewing the January 2016 amended complaint) entered an Order clarifying which claims proceeded against which defendants in the now-consolidated lawsuit. (Doc. 32). That resulted in the addition of defendants Claudia Dowty, Mike Higgins, and Tammy Kimmel.

Now before the Court is a motion for summary judgment filed by Claudia Dowty and Tammy Kimmel (collectively referred to in this Order as "Defendants"). Defendants allege that Plaintiff failed to exhaust his administrative remedies as to them as required by the Prison Litigation Reform Act (PLRA) before filing this lawsuit. The Court finds Plaintiff exhausted his administrative remedies as to both these Defendants.

---

[1] Later pleadings supplied the full name and proper spelling of defendant "Phillipe" – **Lynn C. Phillippe** (see Docs. 18, 19, 22). The Clerk's Office shall correct the docket sheet to properly spell and fully name this defendant.

Therefore, as described below, the Court denies Defendants' summary judgment motion (Doc. 53).

II.  **SUMMARY OF KEY ALLEGATIONS AND EVIDENCE**

This case has a convoluted procedural history, most of which is not material to resolution of the motion now before the Court. Relevant here is the fact that Plaintiff's January 26, 2016 amended complaint (Doc. 35) sufficiently alleged that Defendants Kimmel and Dowty, both nurses, were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. (*See* Doc. 11, p. 3; Doc. 32; Doc. 35).

The gist of Plaintiff's complaint is that on numerous occasions, he was denied medication that had been prescribed to him. Plaintiff alleges that Defendant John Coe, a doctor, prescribed him Chlorphenamine and Naproxen. (Doc. 35, p. 3). Plaintiff alleges that he was prescribed Chlorphenamine on February 13, 2014 and was prescribed Naproxen on August 13, 2014. He also alleges that he received Naproxen from Defendant Higgins, a nurse, as early as February 19, 2014. (*Id.* at 2, 3). Though Plaintiff's amended complaint contains a litany of instances when Plaintiff allegedly was denied medicine, he directs only three allegations against the moving Defendants.

Plaintiff alleges that on March 1, 2014 and on March 27, 2014, his medical records suggest that he received Chlorphenamine and Naproxen per Defendant Kimmel (a licensed practical nurse), but he in fact did *not* receive the medication. (*Id.* at 4). He also alleges that though the records say that on April 30, 2014 he received medication

from Defendant Dowty, he did not actually receive the medicine on that date either. (*Id.*). Plaintiff maintains that he did not receive his Chlorphenamine refill until May 12, 2014, and he did not receive his Naproxen refill until June 27, 2014. (*Id.*).

In support of their motion for summary judgment, Defendants submitted documents they received from Lawrence and from the Illinois Department of Corrections (IDOC) Administrative Review Board (ARB) in response to their subpoenas in this lawsuit. (*See* Docs. 54-2 – 54-11). Combined, those documents total around 400 pages. (*See id.*). In his memo opposing Defendants' motion, Plaintiff points to six grievances he argues demonstrate that he exhausted as to Dowty and Kimmel. (Doc. 57, p. 1, 2).

The first grievance is dated April 20, 2014. (*Id.* at 16). In that grievance, Plaintiff claimed he was prescribed Chlorphenamine on March 9, 2014, and his prescription was to expire on August 13, 2014. (*Id.*). Plaintiff grieved that he was in need of a refill and had been requesting a refill for over a month, including by sending kites and by informing nursing staff during sick call visits and med rounds, and he still had not received the medications. (*Id.*). Neither Defendant Dowty nor Defendant Kimmel is specifically mentioned in this grievance. (*Id.*).

The April 20, 2014 grievance was submitted both on a regular basis and on an emergency basis. (*Id.* at 15, 16). As to the emergency submission, Plaintiff sent the grievance to the Chief Administrative Officer (CAO), who deemed it a non-emergency on April 21, 2014. (*Id.* at 16). Plaintiff then submitted the grievance to the ARB, which

received it on May 2, 2014 and responded on July 31, 2014, indicating that the grievance had been deemed by the CAO to be a non-emergency and that Plaintiff should go through the normal grievance procedure. (*Id.* at 17). The next five grievances are dated in 2015, beginning on June 2, 2015 and ending on September 16, 2015. (*Id.* at 19 – 25). Though the grievances are medical-related, they all pertain to issues Plaintiff was having beginning on May 26, 2015 and after. (*See id.*).

III.   **APPLICABLE LEGAL STANDARDS**

  A.   **Summary Judgment Motions**

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011),** *citing* **FED. R. CIV. P. 56(a).** The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986),** *quoting* **FED R. CIV. P. 56(e)(2).**

A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005).** A genuine issue of material fact exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). On summary judgment, the district court construes the facts and draws the reasonable inferences in favor of the non-moving party. *Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 895 (7th Cir. 2016).

While generally a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but only to determine whether a general issue of triable fact exists, a different standard applies to summary judgment on the issue of exhaustion. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine any contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, 544 F.3d at 740-41.

In the case at bar, (a) Defendants Dowty and Kimmel raised the affirmative defense of failure to exhaust in their answers (Docs. 45, 46), and (b) the question of exhaustion presents a purely legal question, so no hearing is required.

B.     **Exhaustion under the Prison Litigation Reform Act**

Lawsuits brought by prisoners are governed by the PLRA, 42 U.S.C 1997e, which requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until ... administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation.   He cannot exhaust while his lawsuit is pending.  *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).**   If the inmate fails to exhaust before filing suit in federal court, the district court must *dismiss* the suit.   *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[2]

The law of this Circuit requires strict adherence to the PLRA's exhaustion requirement.   "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred."   *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).**   This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require."   *Id.* **at 1025.**   *See also Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)** ('This circuit has taken a strict

---

[2]     Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.   *See* **FED. R. CIV. P. 12(d).**

**compliance approach to exhaustion").** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Jones*, 549 U.S. at 211, *citing Porter v. Nussell*, 534 U.S. 516, 524 (2002). But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. 1997e(a).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006). Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. See also *Booth v. Churner*, 532 U.S. 731, 737 (2001) (exhaustion requirement will help "filter out some frivolous claims.").

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez,* 182 F.3d at 535, *citing* 42 U.S.C 1997e(a); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, 182 F.3d at 535.

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the state. *See Jones*, 549 U.S. at 218.

C. <u>**Exhaustion under Illinois Law**</u>

In Illinois, the process for exhausting administrative remedies is laid out in the IDOC's Grievance Procedures for Offenders. **20 Ill. Adm. Code 504.810.** The procedures first require inmates to speak with their counselor about the issue or problem. **20 Ill. Admin. Code 504.810(a).** If unable to resolve a dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty days of discovery of the dispute. *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible." **20 Ill. Admin. Code 504.810(b).**

The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO). **20 Ill. Adm. Code 504.830(d)**. The prisoner then has the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 Ill. Adm. Code 504.850**. Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO. **20 Ill. Adm. Code 504.840**. The grievance may be handled on an

emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender. *Id.* The request to have a grievance handled on an emergency basis may also be appealed to the ARB. **20 Ill. Adm. Code 504.850**.

IV. ANALYSIS

Defendants assert that no grievance or emergency grievance contained in Plaintiff's records at Lawrence or his records from the ARB mentions Plaintiff failing to receive medication on the specific March and April 2014 dates (and that no grievances mention Kimmel and Dowty). To buttress this assertion, Defendants presented over 400 pages of documents for the Court to sift through, with only some of the documents even having bearing on this suit.[3] Plaintiff, on the other hand, identified six grievances he contends demonstrate that he exhausted as to Dowty and Kimmel.

"Judges are not like pigs, hunting for truffles buried in the record," *Rahn v. Board of Trustees of Northern Illinois University,* **803 F.3d 285, 294 (7th Cir. 2015)**, *cert. denied,* **-- U.S. --, 136 S. Ct. 1685 (2016)**, *quoting United States v. Dunkel,* **927 F.2d 955, 956 (7th Cir. 1991).** The Court will not scour Defendants' 400-page document dump in search of relevant pages. Plaintiff zeroed in on six grievances and attached them to his brief opposing summary judgment. The undersigned will examine those specific grievances.

---

[3] Some of the documents appear to be not at all pertinent to the motion now before this Court. For instance, the first grievance in Exhibit B attached to Defendants' supporting brief relates to conduct by mail room staff at Lawrence, and the second grievance is about the proper supply of grievance forms at the facility. (*See* Doc. 54-2, p. 2 – 8).

The Court understands that Defendants have to play the hand they are dealt, so to speak, but it is an open question whether they could ever meet their burden on summary judgment by merely filing 400 pages of documents and blanket asserting that summary judgment is warranted because neither of the moving Defendants nor their actions are referenced anywhere in the voluminous filing. The undersigned need not resolve that issue here, because one grievance singled out by Plaintiff exhausts as to both Kimmel and Dowty.

Only one grievance can be considered applicable to Kimmel and Dowty -- the April 20, 2014 grievance. The remaining five grievances Plaintiff offered were all signed in the Spring or Summer of 2015 and grieve issues occurring in that timeframe. Not only do those five grievances discuss issues occurring over a year after his allegations against Kimmel and Dowty, but they are outside the 60-day timeframe for filing grievances under the Illinois Administrative Code as to those allegations. Those grievances are too far separated in time from the specific actions allegedly taken by Kimmel and Dowty to exhaust as to the two Defendants.

As to the April 20, 2014 grievance, however, the Court concludes that Plaintiff completed the steps required under the Illinois Administrative Code in order to exhaust. Plaintiff filed the April 20 grievance both on an emergency basis and through the regular course. Regarding the emergency grievance, after receiving the response from the CAO, Plaintiff appealed the grievance directly to the ARB, as directed by IDOC regulation. The ARB issued a response on July 31, 2014, affirming that the grievance

was not an emergency and directing Plaintiff to go through the normal grievance procedure.

As a legal matter, however, Plaintiff did not have to go through the normal grievance procedure after receiving the ARB's response to the emergency grievance. Nowhere in the IDOC's grievance procedures does it require a prisoner to re-grieve through the normal three-step process having received a determination of a non-emergency after appealing to the ARB. *See Thornton v. Snyder,* **428 F.3d 690, 694 (7th Cir. 2005) ("There is nothing in the current regulatory text … that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis.").** *See also Glick v. Walker*, **385 Fed. App'x 579, 583 (7th Cir. 2010) ("The defendants' position that [plaintiff] was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds with 20 Ill. Admin. Code § 5048.840 and** *Thornton v. Snyder***….").** Plaintiff's amended complaint was filed on January 26, 2016. He completed the proper steps with his April 20, 2014 emergency grievance prior to filing this suit.[4]

The April 20, 2014 grievance put Lawrence on notice of Plaintiff's complaints of not receiving medication, and therefore clearly exhausted as to Defendant Kimmel. In that grievance, Plaintiff claimed he was not getting prescribed medication, including,

---

[4] Since Plaintiff completed the proper steps with his *emergency* grievance, the Court need not analyze the steps taken regarding Plaintiff's grievance filed in the normal course on the same date.

specifically, Chlorphenamine. He indicated that he had been requesting refills for over a month. The timeframe referenced by Plaintiff in the grievance includes the time of the two instances where he alleges he was not given medication by Defendant Kimmel (3/1/14 and 3/27/14).

Additionally, the April 20 grievance raises an issue -- not receiving medication -- that encompasses Defendant Kimmel's alleged conduct. The grievance suffices to place Lawrence on notice that Plaintiff was not receiving prescribed medication he needed, and Plaintiff alleges in his complaint that Defendant Kimmel is at least partially responsible for this failure. Plaintiff's allegations against Defendant Kimmel are sufficiently encompassed within the grievance, and Plaintiff need not have specifically named Kimmel in the grievance. "Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick*, 385 Fed. App'x at 582, *citing Jones*, 549 U.S. at 218. *See also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (**"… the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."**). Plaintiff alleges that Defendant Kimmel was one of the individuals responsible for his failure to receive medication in March 2014, and the April 20, 2014 grievance sufficiently placed Lawrence on notice of Plaintiff's problem. Plaintiff exhausted as to Defendant Kimmel.

Though it is a closer question, the Court finds that the April 20, 2014 grievance also exhausts Plaintiff's claims against Defendant Dowty. As with Defendant Kimmel, Plaintiff alleges that Defendant Dowty did not give him medication, contrary to what is recorded in his medical records. He alleges that Dowty did not give him his medication on April 30, 2014, which is of course *after* Plaintiff prepared the April 20, 2014 grievance. But the fact that the April 20 grievance was prepared before Defendant Dowty's alleged conduct took place does not preclude the grievance from exhausting as to her. Plaintiff's allegations indicate that his failure to receive medication was an *ongoing problem beginning in March 2014*, and it was not until May 2014 that he got the first refill.

"In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." ***Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)**. The April 20, 2014 emergency grievance gave Lawrence and IDOC sufficient notice of Plaintiff's ongoing problem of not receiving his medication, a withholding or refusal which he alleges Defendant Dowty was a part of, and Plaintiff did not need to file a separate grievance after April 30, 2014. *See id.* **("once a prison has received notice of, and an opportunity to correct a problem, the prisoner has satisfied the purpose of the exhaustion requirement.")**.

V. CONCLUSION

Plaintiff took all procedural steps required of him in exhausting the April 20, 2014 emergency grievance. And that grievance sufficiently placed Lawrence officials on

notice that Plaintiff was failing to receive prescribed medication—a problem which Plaintiff alleges Defendants Kimmel and Dowty took part in creating and/or continuing. Plaintiff exhausted his administrative remedies as to Defendants Kimmel and Dowty. Accordingly, the Court **DENIES** Defendants Dowty and Kimmel's motion for summary judgment (Doc. 53).

IT IS SO ORDERED.

DATED: March 7, 2017.

*S/ Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge