## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS,             )
                             )
           Plaintiff,       )
                             )
vs.                      )    **Case No.   15-cv-1169-MJR-SCW**
                             )
STEPHEN DUNCAN,       )
JOHN COE,                 )
CLAUDIA DOWTY,        )
MIKE HIGGINS,          )
TAMMY KIMMEL,        )
LYNN C. PHILLIPPE, and  )
NICHOLAS LAMB,       )
                             )
           Defendants.    )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**I.**    **INTRODUCTION**

Acting *pro se*, James Owens, an inmate at Lawrence Correctional Center within

the Illinois Department of Corrections (IDOC), filed this lawsuit under 42 U.S.C. § 1983.

Mr. Owens (Plaintiff) alleges that prison staff and medical personnel violated his

federally-secured constitutional rights in retaliating against him and failing to provide

him with needed medication.   On threshold review of the complaint under 28 U.S.C.

§ 1915A, the undersigned dismissed some claims and allowed two claims to proceed –

Count 1 for retaliation and Count 8 for deliberate indifference to serious medical needs.

The matter comes now before the Court on two motions for summary judgment,

one filed by Coe, Dowty, Higgins, Kimmel, and Phillippe (the Wexford Defendants), and another filed by Duncan and Lamb (the IDOC Defendants). The Wexford Defendants maintain that Plaintiff cannot establish that they were deliberately indifferent to his medical needs or that they retaliated against him for filing an earlier lawsuit. (Docs. 79-80). The IDOC Defendants maintain that Defendant Duncan is not a proper party against whom injunctive relief can be ordered and that the claims against Defendant Lamb are barred by sovereign immunity. (Docs. 82-83). Plaintiff filed materials opposing the Wexford Defendants' motion. (Docs. 86, 88). For the reasons explained below, the Court grants both summary judgment motions.

## II.    SUMMARY OF KEY ALLEGATIONS AND EVIDENCE

In opposing summary judgment, Plaintiff spills a great deal of ink reciting what appear to be purported Wexford policies regarding the dispensing of medication and transactions with prescription drug vendors. Plaintiff also discusses records from a pharmaceutical vendor. The Court need not consider these facts to assume, for the sake of deciding the motions at bar, that Plaintiff did not receive medication on the dates claimed, as Plaintiff contends. The record tendered by the parties contains a plethora of information regarding sick call dates and visits. The Court recites only those facts which are material to disposition of the motions now before it.

At all times relevant to this suit, Plaintiff was incarcerated at Lawrence Correctional Center (Lawrence). On February 13, 2014, Defendant Dr. John Coe prescribed an antihistamine, Chlorpheniramine or "Chlor-Trimeton" (CTM), for

Plaintiff's allergies and sinus pain, to be taken four times a day, as needed. (Doc. 80-4, p. 2). Dr. Coe also prescribed Naproxen for Plaintiff's hip pain, to be taken twice a day. (*Id.*). On February 19, 2014, Defendant Nurse Mike Higgins dispensed 30 CTM and 60 Naproxen to Plaintiff. (Doc. 80-5, p. 3). Defendants state that Defendant Nurse Tammy Kimmel provided Plaintiff with CTM and Naproxen in the same dosage on March 1, 2014. (*Id.* at 4). Plaintiff, relying on his personal datebook records, maintains that he did not receive a sick call pass on March 1, 2014. (Doc. 86, p. 2; Doc. 86-1, p. 4). According to Defendants, Nurse Kimmel also dispensed CTM and Naproxen to Plaintiff on March 27, 2014, and Defendant Nurse Dowty dispensed the same drugs to Plaintiff on April 30, 2014. (Doc. 80-5, p. 4). Plaintiff, via his datebook, disputes that he received a call pass for sick call on those dates. (Doc. 86, p. 2; Doc. 86-1, p. 5, 6). According to Plaintiff, he requested his medication on March 21, 2014. (Doc. 86, p. 2; Doc. 86-1, p. 4). It is undisputed that Nurse Kimmel was present for sick call on March 1st and March 27th, and Nurse Dowty was present on April 30th. (Doc. 80-5, p. 4).

On May 5, 2014, Plaintiff filed a lawsuit in this district, Case No. 14-cv-0510, naming Dr. Coe as a defendant. That suit was consolidated with the instant case. (*See* Doc. 11). Dr. Coe became aware of that suit sometime before his answer was filed on June 24, 2014. (Doc. 80-4, p. 16). Plaintiff filed another suit, Case No. 14-cv-1093, naming Defendant Nurse Practitioner Phillipe as a defendant. Defendant Phillipe became aware of that suit on May 7, 2014. (Doc. 80-9, p. 8).

On May 13, 2014, Plaintiff was evaluated by a nurse practitioner for back pain. (Doc. 80-4, p. 4). Plaintiff stated that he did not like the Naproxen and would rather take Motrin. (*Id.*). He did not report any problems regarding his refills. (*Id.*). The Naproxen was discontinued, and Motrin and Robaxin (a muscle relaxant) were ordered. (*Id.*). Plaintiff received those drugs from May 13, 2014 through May 20, 2014. (*Id.*).

On May 30, 2014, Plaintiff was seen by Dr. Coe for the first time since Plaintiff filed the 2014 lawsuit against Coe. (*Id.*). Plaintiff informed Dr. Coe that the previous prescription for CTM was not sufficient. (*Id.*). This was the first time Dr. Coe was made aware that the prescription was inadequate. (*Id.*). Dr. Coe promptly altered the CTM prescription, so that Plaintiff would have CTM continuously. (*Id.* at 5).

According to Plaintiff, his records indicate that he sent requests for medication on May 15, 2014 and on May 23, 2014. (Doc. 86-1, p. 6 – 7). Aside from the week he took Motrin, Plaintiff's records indicate he was without Naproxen from March 21, 2014 to June 27, 2014, when he received 30 tablets.[1] (Doc. 86, p. 3). On June 30, 2014, Defendant Phillippe conducted a chart review of Plaintiff's medical record and noted he was requesting a refill for an analgesic balm. (Doc. 80-9, p. 4). She renewed Plaintiff's prescription for the balm. (*Id.*). Dr. Coe saw Plaintiff on July 23, 2014 for complaints of a groin fungus. (Doc. 80-4, p. 5). Dr. Coe diagnosed Plaintiff with chemical dermatitis,

---

[1]     Plaintiff also attempts to rely on grievances to establish that at some unspecified time, Phillipe would not discuss Plaintiff's CTM with him. (*See* Doc. 86, p. 3). Any hearsay issues aside (i.e., as to the admissibility of this evidence), the Court cannot see how the cited grievances support Plaintiff's contention.

gave Plaintiff some instructions, and prescribed 2% hydrocortisone cream. (*Id.* at 5 - 6). Plaintiff did not report any problems with pain medication or CTM. (*Id.* at 6). Dr. Coe again saw Plaintiff on August 21, 2014, for an issue relating to his back brace. (*Id.* at 6). Plaintiff again did not raise any complaints regarding not receiving medications. (*Id.*).

Plaintiff sent a grievance on August 21, 2015, complaining of a lack of CTM. (Doc. 86-2, p. 36 - 37). It was submitted as an emergency grievance but deemed a non-emergency by the warden. (*Id.* at 36). There is no indication of a response to the grievance from Dr. Coe or any other medical personnel. (*Id.* at 36 – 38).

Defendant Phillippe saw Plaintiff on September 2, 2014 for complaints of left hip and low back pain. (Doc. 80-9, p. 4). After an examination, Phillippe ordered Motrin for Plaintiff but then, based on comments made by Plaintiff, struck the order and ordered Naproxen for him, to be taken twice a day. (*Id.* at 4). She also renewed his order for analgesic balm, along with ordering a number of lab tests to monitor Plaintiff's chronic medical conditions. (*Id.*).

Plaintiff was next seen and treated by Dr. Coe on September 26, 2014, this time for a wart on his finger. (Doc. 80-4, p. 7). According to Defendants, Plaintiff was seen in sick call on October 9, 2014, October 16, 2014, and October 22, 2014, and was given CTM on one visit, both CTM and Naproxen on another visit, and Motrin on the third visit. (*Id.*). Plaintiff disputes that he was seen in sick call on these dates. (Doc. 86, p. 3; Doc. 86-1, p. 12). Plaintiff indicates that he had a call pass on October 17, 2014, but that it was cancelled. (Doc. 86, p. 3; Doc. 86-1, p. 12). He also states that, contrary to medical

records, he did not receive Naproxen on October 18 and October 22, and he made a medication request on October 26.   (Doc. 86, p. 3).

Dr. Coe performed a chart review of Plaintiff's medical record on December 2, 2014.   Coe noted that a back support had been ordered for Plaintiff in August 2014. (Doc. 80-4, p. 9).   Since Plaintiff's size may have changed, he concluded that Plaintiff would need to be seen at sick call.   (*Id.*).   Dr. Coe saw Plaintiff on December 12, 2014, and Coe ordered a smaller back support for Plaintiff.   (*Id.*).

On December 18, 2014, it was noted by a physician's assistant that Plaintiff was requesting medication and had an active CTM prescription.   (*Id.*).   Plaintiff's prescriptions for Naproxen and the analgesic balm were renewed.   (*Id.*).   On January 13, 2015, Plaintiff's prescription for CTM was renewed by a physician's assistant for 6 months.   (*Id.*).   Plaintiff claims that he requested sick call on March 27, 2015 but did not receive a pass.   (Doc. 86, p. 3; Doc. 86-1, p. 18).

Plaintiff presented to Defendant Phillippe on April 20, 2015 for hemorrhoids and decreased hearing in his right ear.   (Doc. 80-9, p. 5).   Phillippe examined Plaintiff, wrote an order for a topical anesthetic, and referred him to Dr. Coe regarding the hearing.   (*Id.*).   Plaintiff was seen by Dr. Coe on May 15, 2015.   (Doc. 80-4, p. 11).   Dr. Coe referred Plaintiff to "Collegial" for an on-site hearing screening, which was approved on May 19, 2015.   (*Id.*).

Defendant Phillippe saw Plaintiff on June 8, 2015, to evaluate him for vitamin deficiencies.   (Doc. 80-9, p. 5).   In addition to treating Plaintiff for these deficiencies,

due to complaints of heartburn, Phillippe ordered a lab test for *H pylori*, a gastrointestinal bacteria that can cause peptic ulcer disease. (*Id.*).

Plaintiff had his hearing test with Dr. Coe on June 17, 2015. Coe noted Plaintiff had bilateral hearing loss. (Doc. 80-4, p. 11). He also noted that Plaintiff was not able to put his arms together in the back, so Coe renewed a front cuff permit. (*Id.*). Since Plaintiff was being monitored for a GI infection, Dr. Coe discontinued the Naproxen prescription and replaced it with Tylenol, since Tylenol is not irritating for the stomach. (*Id.* at 11 – 12).

According to Plaintiff, he received CTM on June 16, which was the last refill of his prescription. (Doc. 86, p. 3). He requested that Dr. Coe renew his CTM during the June 17 visit, but Coe refused. (*Id.*). Plaintiff admitted in his deposition that he had received 108 CTM pills *the previous day*. (Doc. 80-8, p. 28). Plaintiff sent a request to Dr. Coe for a new CTM prescription on July 16, 2015 and July 23, 2015, saying his prescription had expired. (Doc. 86, p. 4; Doc. 86-1, p. 22). Plaintiff sent a sick call request on July 24th. He says that when he was seen at sick call (he does not say by whom), he was denied CTM and was denied a referral to Dr. Coe. (Doc. 86, p. 4). According to Plaintiff, he was refused CTM at sick call again on July 28th and was provided 19 CTM on August 3rd after tendering a $5.00 co-pay money voucher. (*Id.*). On August 6th, Plaintiff was seen by Defendant Phillippe, who refused to provide Plaintiff with CTM. Plaintiff says he was again denied CTM on August 9, though he does not indicate who made the denial. (*Id.*). On August 10th, Plaintiff had another

sick call pass not honored. (*Id.*). Plaintiff spoke with Warden Duncan on August 18, 2015, informing the warden of the situation, and Duncan indicated he would inform the Healthcare Unit Administrator. (*Id.*). Plaintiff did not receive a new CTM *prescription* until March 3, 2016. (*Id.*).

Plaintiff was seen by Defendant Phillippe on September 15, 2015 for a follow-up regarding his *H pylori* and vitamin D deficiency. (Doc. 80-9, p. 7). Plaintiff told Phillippe that Tylenol was upsetting his stomach, and he requested that she reorder Naproxen since he was no longer having heartburn. (*Id.*). She discontinued Tylenol, reordered Naproxen, and ordered a repeat lab for *H. pylori*. (*Id.*). Plaintiff acknowledges that his Naproxen prescription was renewed, but he claims that Phillippe refused to discuss CTM with him. (Doc. 86, p. 4).

Plaintiff presented to nurse sick call on September 22, 2015 for symptoms of an upper respiratory infection. (Doc. 80-4, p. 13). He was given CTM by nurses and referred to a nurse practitioner. (*Id.*). Plaintiff was seen by Defendant Phillippe on October 5, 2015. (Doc. 80-9, p. 8). Plaintiff informed her that he was suffering from sinus pressure and a "stuffy" nose. (*Id.*). Phillippe noted that Plaintiff had symptoms consistent with allergies. She gave Plaintiff 30 tabs of Claritin, an allergy medication. (*Id.* at 8 - 9). Plaintiff wanted CTM not Claritin. (Doc. 86, p. 4).

Neither Dr. Coe nor Nurse Practitioner Phillippe schedules appointments for inmates or receives inmate sick call requests. (Doc. 80-4, p. 16). Inmates are first seen at nurse sick call; if after the nurse sick call appointment, the nurse determines that a

referral to a doctor or nurse practitioner is necessary, then the nurse schedules the inmate to be seen on a doctor's or nurse practitioner's call line.   (*Id*.).

According to the sworn affidavits of both Dr. Coe and Nurse Practitioner Phillippe, knowledge of Plaintiff's 2014 lawsuit against them did not have any influence on their care of Plaintiff, and neither made any decision on or about Plaintiff's treatment in retaliation.   (Doc. 80-4, p. 16; Doc. 80-9, p. 8).

Plaintiff asserts that, since filing the 2014 suit, he has had long lapses in Naproxen and CTM prescriptions.   (Doc. 86, p. 5).   The Court has not been pointed to any information, however, regarding the current state of Plaintiff's medication needs.[2]

## III.    STANDARD GOVERNING SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.   Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.   *Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing** FED. R. CIV. P. 56(a)).   The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material

---

[2]     Defendants provided a medical record from February 27, 2017 that went unaddressed and therefore undisputed by Plaintiff. (Doc. 80, p. 11; Doc. 80-1, p. 89).   According to this record, five bottles of medication were found in Plaintiff's cell.   (Doc. 80-1, p. 89).   One of the bottles contained Excedrin and Tylenol and another contained "plastic bagged" CTM.   (*Id*.).   While this evidence could potentially be relevant to the question of whether Plaintiff was suffering an objectively serious medical condition, the Court did not consider this evidence in deciding the motions for summary judgment.

fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterp. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011)**.   As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

IV.   **ANALYSIS**

A.   <u>**Deliberate Indifference to Serious Medical Needs (Eighth Amendment)**</u>

Plaintiff alleges that Defendants Coe, Dowty, Kimmel, Higgins, and Phillippe (the Wexford Defendants) were deliberately indifferent to his serious medical needs when they refused to refill his Naproxen and CTM prescriptions.   Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted))**. *Accord Rodriguez v. Plymouth Ambulance*

*Service*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").

A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care.  *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards").  *See also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare.  *See Holloway*, 700 F.3d at 1073-74.  A doctor may provide the care he feels is reasonable as long as it falls within a "range of acceptable courses based on prevailing standards in the field."  *Id.* at 1073.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test.  *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  The first prong is whether the prisoner has shown he has an objectively serious medical need.  *Arnett*, 658 F.3d at 750.  *Accord Greeno*, 414 F.3d at 653.  A medical condition need not be life-threatening to be serious; it could be a condition that would result in further significant injury or unnecessary and wanton

infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).**

***Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, **414 F.3d at 653.** The inmate need not show the defendant desired to cause harm or literally ignored the inmate's complaint, just that the defendant was aware of the inmate's serious medical condition and knowingly or recklessly disregarded it. *Cesal v. Moats*, **851 F.3d 714, 722 (7th Cir. 2017);** *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; it is more akin to intentional wrongdoing. *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013).** The standard is criminal recklessness; even gross negligence will not meet this standard. *Id.* **at 481**.

In the instant case, Plaintiff cannot recover against Defendants Dowty, Higgins, and Kimmel for their care of him. *For the purposes of this motion*, the Court assumes, as stated by Plaintiff, that contrary to their evidence otherwise, Kimmel and Dowty did not dispense CTM and Naproxen to Plaintiff on March 1, March 27, and April 30 of 2014. The mere fact that they did not dispense Plaintiff his medication on those dates would

not be sufficient evidence to find them deliberately indifferent, however. There must first be evidence that Kimmel and Dowty knew that Plaintiff had a serious medical condition and needed CTM and Naproxen on those dates. There is no such evidence.

Plaintiff does not take the position that he asked Kimmel and Dowty for his medication on those dates and they refused. He says he did not go to sick call on those dates. As to March and April 2014, the record presented to the Court indicates that Plaintiff requested medication only on March 21, 2014. Plaintiff does not indicate how he made that request, or whether it was made to any specific person. There is no evidence on which a jury could reasonably find that Kimmel, Dowty, Higgins, or any of the other Defendants was aware of this request. In fact, there is no evidence to suggest that these Defendants were aware of *any* of Plaintiff's sick call or medication requests. The only evidence relating to Defendant Higgins is that he in fact provided Plaintiff with CTM and Naproxen on February 19, 2014. There is no evidence even remotely suggesting that Defendant Higgins was deliberately indifferent. Simply put, no jury could reasonably find that Kimmel, Dowty, or Higgins was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff also cannot recover against Dr. Coe for deliberate indifference. Plaintiff saw and was treated by Coe many times after being prescribed CTM. The first disagreement was during the June 17, 2015 visit, when Dr. Coe refused to issue a new CTM prescription. But Plaintiff admitted in his deposition that he received 108 CTM *the day before this visit*. He argues that since the pills he received the previous day were his

last refill on that prescription, Dr. Coe should have issued him *another* prescription.

This argument is a nonstarter. If taken as directed, Plaintiff had enough CTM to last him nearly a month. Given the pills available to Plaintiff, the fact that Dr. Coe would not renew his prescription on that date in no way equates to deliberate indifference. If Dr. Coe were required to write another prescription, that prescription would also have an end date. Should Dr. Coe be required to prescribe a third prescription, while plenty of medication was left from the second one? Of course not. Plaintiff's June 17th visit is a clear example of a physician exercising his professional judgment, and a patient just not satisfied with the doctor's decision. This dissatisfaction does not constitute deliberate indifference. ***Holloway*, 700 F.3d at 1074. *See also Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017)("mere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation.").**

On July 16 and July 23, 2015, Plaintiff also sent requests for a new CTM prescription to Dr. Coe. Plaintiff cannot recover for Dr. Coe's failure to respond to these requests, for two reasons. First, there is no evidence that Plaintiff had a serious medical need at that time. CTM treats allergies and sinus pain. There is no evidence that Plaintiff was suffering from either of those afflictions when he made the CTM requests. Even assuming Plaintiff was suffering from continuing allergies, there would have to be a specific showing of sinus pain for the Court to find that a *serious* medical need existed.

Defendants argue, and on the record before him the undersigned agrees, that seasonal allergies themselves, standing alone, are not a serious medical need. The parties have not identified a Seventh Circuit case on this point. District courts in other federal circuits have held that seasonal allergies do not constitute an objectively serious medical need. ***See Hendricks v. Cuyahoga County Board of Commissioners*, 2015 WL 710930, \*5 (N.D. OH. February 18, 2015) (drawing a line between medical conditions requiring medical treatment and "those which present what are essentially options for the inmate in terms of seeking relief from symptoms" such as "seasonal allergies"); *Davidson v. Scully*, 155 F.Supp.2d 77, 86 (S.D. NY. 2001) ("Seasonal allergies is a common condition that does not rise to constitutional dimensions.")**. As to the case at bar, the undersigned agrees with those courts and finds that, *absent evidence of severe symptoms such as sinus pain*, common generalized seasonal allergies, while annoying and uncomfortable, do not themselves constitute an objectively serious medical condition. Much less than provide evidence of such severe symptoms, here, Plaintiff has failed to provide evidence that he suffered from *any* symptoms when he submitted his July 16th and July 23rd requests.

Second, there is no evidence that Dr. Coe ever *received* these requests, and the record is such that a jury could not reasonably infer receipt by Coe. At Lawrence, to be seen by a physician, the proper procedure is to put in for nurse sick call. If the nurse believes the inmate needs to be examined by a doctor or nurse practitioner, the nurse will make a referral. This policy is contrary to the course of action taken by Plaintiff on

July 16 and July 23, when Plaintiff sent requests apparently addressed to Dr. Coe. As Plaintiff's requests were outside of proper prison protocol, a jury could not reasonably infer that Dr. Coe received the requests and had knowledge of them. Plus, as Dr. Coe was not responsible for granting or denying initial sick call requests, a jury could not find that Dr. Coe had knowledge of any of Plaintiff's sick requests and their denials.

Plaintiff also tries to claim that his August 21st grievance renders Dr. Coe deliberately indifferent. This assertion falls short of surviving summary judgment. There is no indication that Dr. Coe ever saw or was aware of the August 21st grievance. The *only* evidence presented to the Court regarding that grievance is the grievance itself, which indicates that it was sent as an emergency, deemed to be a non- emergency by the warden, and denied by the Administrative Review Board. There is no indication of a response by Dr. Coe anywhere on the grievance, and there is nothing to suggest that the warden or anyone else made Dr. Coe aware of the grievance.

Summary judgment is also warranted on Plaintiff's deliberate indifference claims against Nurse Practitioner Phillippe. Plaintiff argues that Phillippe refused him CTM on four occasions; the record supports refusal on three occasions. Plaintiff claims that Phillippe became aware that he was "out of [his] CTM" on July 13, 2015, and she refused to renew it. He cites nothing in the record to support this claimed encounter. Assuming that Plaintiff did have this exchange with Phillippe on July 13th, a jury would still be unable to reasonably find deliberate indifference, as there is no indication Plaintiff had a *serious* medical need requiring CTM at that time.

Plaintiff merely indicates that Phillippe refused him CTM. It is for this same reason that Plaintiff cannot recover for the August 6th and September 15th encounters. There is no evidence suggesting that Plaintiff at those times was suffering from complications from allergies, like sinus pain. Additionally, the August 3rd visit occurred a mere three days after Plaintiff had been provided 19 CTM. Even if Plaintiff were suffering from allergies on the 3rd, he should have had in his possession plenty of the CTM he needed.

The last encounter with Defendant Phillippe appearing in the record occurred on September 22, 2015. The evidence demonstrates that, during this visit, Plaintiff was suffering from sinus pain and a stuffy nose, and Phillippe provided him with Claritin, not CTM. Plaintiff essentially argues that Phillippe was deliberately indifferent in dispensing Claritin over his request for CTM. Again, an inmate is only entitled to reasonable measure to meet a serious risk of harm; he is not entitled to demand specific care or preferred medications. *Holloway*, **700 F.3d at 1074**. There is nothing to suggest that in dispensing Claritin, Nurse Practitioner Phillippe failed to take reasonable measures to address Plaintiff's sinus pain and nasal problems. Finally, as with Dr. Coe, Phillippe was not responsible for handling Plaintiff's sick call requests, and she cannot be said to have been on notice of any of the medication or sick call requests sent by Plaintiff to the Healthcare Unit.

In sum, – the Wexford Defendants have sustained their burden of demonstrating the lack of any genuine issue of material fact and an entitlement to judgment as a matter

of law on Plaintiff's deliberate indifference claims. A reasonable jury could only conclude that these Defendants adequately treated Plaintiff and tended to his medical needs as necessary. Summary judgment is appropriate as to Plaintiff's deliberate indifference claims against Defendants Dowty, Kimmel, Higgins, Coe, and Phillippe.

## B. Retaliation (First Amendment) by Defendants Coe and Phillippe

Plaintiff claims that Defendants Phillippe and Coe retaliated against him for filing lawsuits against them in 2014. The fact that Plaintiff cannot recover against Phillippe and Coe for deliberate indifference does not mean they are also entitled to summary judgment on Plaintiff's retaliation claims. Conduct need not be deliberately indifferent to satisfy the standard for First Amendment retaliation.

To survive summary judgment on the retaliation claims, Plaintiff must show that (1) he engaged in activity protected by the First Amendment (for instance, filing a grievance or lawsuit); (2) he suffered a deprivation sufficient to deter First Amendment activity in the future; and (3) the protected activity was at least a motivating factor for the deprivation (i.e., the defendant's decision to take the retaliatory action). *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). *See also Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Greene v. Doruff*, 660 F.3d 975, 979–80 (7th Cir. 2011 Retaliatory official action violates the United States Constitution, even if the prison official would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

In a First Amendment case, the burden of proof is split between the parties. *Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)** (**citing** *Mt. Healthy Board of Education v. Doyle*, **429 U.S. 274 (1977))**.   First, the plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action.   *Id.* **at 635.**   The burden then shifts to the defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive.   *Id.*

Coe and Phillippe point to the length of time between Plaintiff filing the 2014 lawsuits and their alleged acts of retaliation.   In deciding a First Amendment retaliation claim, the length of time from the protected conduct and the act of retaliation is an important consideration, as are the opportunities available to the retaliator in that time frame.   In *Kidwell*, an employment retaliation case involving a police officer, the plaintiff suffered adverse employment actions months and even over a year after participating in instances of protected speech.   *Id.,* **679 F.3d at 961-67.**   The Court held that the "extended time gaps alone militate against allowing an inference of causation based on suspicious timing."   *Id.* **at 967.**

Here, there is no indication of conduct by Defendants Coe and Phillippe that would be sufficient to deter First Amendment activity until a full year after Plaintiff filed suits against them.   Plaintiff sued Dr. Coe on May 5, 2014. It was not until June 17, 2015 that Coe refused Plaintiff's request to renew the CTM prescription.   Similarly, Phillippe became aware of a suit Plaintiff filed against her on May 7, 2014, but the visit where

Phillippe first refused to provide Plaintiff additional CTM was either July 13, 2015 or August 6, 2015. Such gaps in time are not suggestive of retaliatory conduct.

It is true that in some instances, a jury could find retaliation even where a large gap in time exists between the protected speech and the adverse action. For instance, in *Neal v. Veath,* Judge Williams of this District Court found that a jury could reasonably infer retaliation even though there was gap of almost four years between the act of protected speech and the retaliatory action. **2017 WL 1132559, \*1-2, \*5 (S.D. IL. Mar. 27, 2017)**. There, contrary to *Kidwell*, as the inmate had been transferred to another prison after the protected speech, the defendants did not have an opportunity to retaliate against the inmate during the four-year period, *and* they made an adverse action against the inmate at the first opportunity available after his return to their prison. ***Id.* at \*5.** There, in addition to the temporal gap between the protected speech and adverse action, the question of what opportunities were available to the defendants to take such an action was significant. ***Id.***

Here, unlike *Neal*, and more similar to *Kidwell*, Defendants Coe and Phillippe had numerous opportunities to refuse Plaintiff his CTM or take other adverse actions, but they did not until over a year after he filed suit against them. In fact, not only did these Defendants not refuse Plaintiff his CTM for over a year, they saw and treated him for a variety of issues during the intervening time, without incident. Plaintiff was seen by Dr. Coe *six times* over a year, before Coe refused to write the second CTM prescription on June 17, 2015. During that time, Dr. Coe altered Plaintiff's CTM prescription to meet

his needs, provided cream for a fungus, treated Plaintiff for an issue relating to his back brace, treated a wart on Plaintiff's finger, ordered Plaintiff a small back brace, and referred Plaintiff to Collegial for a hearing screening.

After Plaintiff filed suit against Defendant Phillippe, she saw Plaintiff four times before refusing him a CTM prescription. During those visits, Phillippe renewed a prescription for an analgesic balm, ordered Naproxen for Plaintiff's hip pain, ordered a topical anesthetic for Plaintiff's hemorrhoids, referred Plaintiff to Dr. Coe regarding his hearing, and ordered a lab test for *H pylori*. To find that Coe and Phillippe retaliated against Plaintiff, a jury would have to conclude that they decided not to prescribe CTM because of Plaintiff's lawsuits after having properly treated Plaintiff for over a year.

There is simply no evidence suggesting that Defendants Coe and Phillippe retaliated against Plaintiff for filing suit against them in 2014. The record, in fact, strongly suggests the opposite—Coe and Phillippe exercised their professional judgment and adequately treated Plaintiff. Stated another way, construing the facts and reasonable inferences in the light most favorable to Plaintiff, there is no evidence that his protected activity motivated Defendants' allegedly retaliatory action. No jury could reasonably find that Coe and Phillippe retaliated against Plaintiff by not prescribing him CTM.[3] Summary judgment is merited on the retaliation claims.

---

[3] To the extent that Plaintiff claims that any of the other Defendants retaliated against him, there is no evidence in the record to allow a jury to reasonably find in Plaintiff's favor on those claims.

## C. Claims against Wardens Duncan and Lamb

Plaintiff did not respond to the summary judgment motion filed by Warden Lamb. Therefore, the Court takes as true the facts set forth by Defendant Lamb in his summary judgment motion. *See* FED. R. CIV. P. 56(e).

Originally, Plaintiff sued Warden Duncan both in his individual capacity and in his official capacity. (Doc. 6, p. 3, 8). In his amended complaint, however, Plaintiff stated that Warden Duncan was being sued only in his official capacity for injunctive relief. (Doc. 35, p. 2). Plaintiff confirmed this at his deposition, stating that he does not seek monetary damages from Duncan. (Doc. 80-8, p. 38). For injunctive relief, Plaintiff asks that the Court order that Wexford personnel follow policies, that he be provided proper healthcare, and that sick call passes not be allowed to be cancelled. (*Id.*, p. 38–39). As Plaintiff seeks only injunctive relief against Warden Duncan, and since Warden Lamb (the current Warden of Lawrence) has been substituted for the official capacity claims (*see* Doc. 112), all remaining claims against Warden Duncan are **DISMISSED**.

For this Court to issue a permanent injunction, Plaintiff must demonstrate: (1) success on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendants; and (4) that the public interest will not be harmed by the relief requested. *ADT Security Services, Inc. v. Lisle-Woodridge Fire Prot. Dist.*, **672 F.3d 492, 498 (7th Cir. 2012)**. Under the Prison Litigation Reform Act (PLRA), an injunction in a prisoner lawsuit must be "narrowly drawn" and can extend "no further than necessary to correct the violation." **18 U.S.C. § 3626(a)(1)**.

Because Plaintiff has failed to demonstrate success on the merits of his claims, and because he cannot demonstrate irreparable harm (as there is no evidence of any ongoing constitutional violation), Plaintiff cannot succeed on a claim for injunctive relief against Warden Lamb.   Moreover, the relief sought would certainly not be "narrowly drawn" and would run afoul of the PLRA.   Warden Lamb is entitled to summary judgment.

## V.   CONCLUSION

No jury could reasonably find that Defendants were deliberately indifferent to Plaintiff's serious medical needs or retaliatory in the manner in which they administered Plaintiff's medications or treated him.   This Court is not able to provide Plaintiff with any injunctive relief.   Defendants' motions for summary judgment (Docs. 79, 82) are **GRANTED.**   The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Coe, Dowty, Higgins, Kimmel, Phillipe, Duncan and Lamb and against Plaintiff Owens.   No further claims remaining, all settings are canceled, and the Clerk of Court shall close the case.

IT IS SO ORDERED.

DATED: January 26, 2018

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge